John Kauffman (SBN 302422)
john.kauffman@lawhq.com
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
Telephone: (385) 285-1090

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brad Kitchen,<br><br>            Plaintiff,<br><br>    v.<br><br>Zip Capital Group, LLC, and Farid Karimi,<br><br>            Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT |

## INTRODUCTION

1.     Like most Americans, Brad Kitchen ("Brad") has a mobile residential telephone.

2.     Being mobile, Brad takes this phone everywhere. Brad uses this phone to receive and make important calls, to get emergency information, and to receive and send text messages to family members and friends. Brad uses this phone regularly for personal enjoyment.

1

3.     But Brad's privacy and phone are both invaded by the text messages of Defendants Zip Capital Group, LLC ("Zip Capital") and Farid Karimi ("Karimi").

4.     Brad has no relationship with Defendants, has no account with Defendants, has never provided any phone number to Defendants, and has never consented to Defendants sending any type of communication.

5.     Brad has tried to eliminate the harassment and invasion of privacy from unauthorized calls by registering on the National Do Not Call Registry ("DNCR"), but even that did not work.

6.     Brad is not the only person Defendants have harassed with calls and text messages. Zip Capital has been sued four other times in the last few years for telephone spam.

7.     Yet, Defendants simply continue to blast calls and text messages without caring if consent was obtained or if the recipient was on the DNCR.

8.     "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

9.     Brad brings this action for himself and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this District.

## PARTIES

12.    Plaintiff Brad Kitchen is a resident of Utah County, Utah.

13.    Defendant Zip Capital Group is a limited liability company with its principal place of business in Irvine, Orange County, California.

14.    Defendant Farid Karimi is a resident of Orange County, California.

## FACTUAL ALLEGATIONS

15.    Brad's privacy and phone have been invaded by the non-emergency telemarketing calls from Defendants.

16.    Brad is the residential subscriber of the cell phone number 801-865-0853. Brad uses this number only for personal use and does not use it in any business.

17.    Some websites such as Facebook and Yelp say that 801-865-0853 is a business number. However, it is not. These online listings are not controlled by Brad. Brad has even attempted to remove his number from these websites, but without success.

18.    Brad registered 801-865-0853 on the DNCR to stop telephone solicitations on February 1, 2020.

19.    Defendants knowingly and willfully texted Brad at least two times from 949-390-5029:

> On October 20, 2021
> Hi, its Farid w Capital Group! I still wanted to personally ensure we get you funding for your business! When is the best time to give you a call?

<u>On December 29, 2021</u>
Hi, its ZIP w Capital Group! I still have funding for your business can we discuss.

20.     The text message on October 20, 2021 says "Hi, its Farid…."

21.     Farid Karimi is one of the principals of Zip Capital.

22.     Farid Karimi personally sent, participated in, and authorized at least some of the text messages.

23.     Brad never provided 801-865-0853 to Defendants, never had a relationship with Defendants, and never gave permission to Defendants to send any type of communication.

24.     These text messages were sent for the purpose of encouraging the purchase of loans.

25.     The calls were made using an Automatic Telephone Dialing System ("ATDS"), and/or an artificial or prerecorded voice message. This is based on the following facts:

   i.     the text messages were not personalized;

   ii.    Zip Capital has been sued many times for using an Automatic Telephone Dialing System in violation of the TCPA;

   iii.   Plaintiff's legal counsel has other clients who have reported telephone calls and texts from Zip Capital even though they never provided their numbers to Zip Capital;

   iv.    the telephone numbers the text messages came from are provided by Twilio, Inc which allows callers to configure and send automated calls en masse;

v.    The phone number was not provided to Defendants, so it was randomly generated; and

vi.   the phone numbers spammed by Defendants appear to be randomly or sequentially produced not from information consensually provided to Defendants, but from bots, public data sources, or some other means as Brad did not provide Defendants with his number.

26.    The text messages did not disclose the name of the legal entity responsible for the text messages.

27.    On information and belief, Defendants have sent text messages like these to thousands of people.

28.    These calls have caused Brad frustration, stress, anxiety, and worry about scammers. The calls hinder Brad from determining the purpose of the call, from making a do-not-call request, and from monitoring compliance with the TCPA rules. The calls cause Brad to avoid looking at his phone when it may be important. The calls reduce the storage and battery life on Brad's phone. The calls dimmish the value of Brad's phone and Brad's enjoyment of life. In short, the calls invade Brad's privacy and cause a nuisance, an annoyance, and an intrusion into Brad's seclusion.

**LEGAL STANDARD**

29.    **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1). If the call

"introduces an advertisement or constitutes telemarketing," then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

30. **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

31. **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

32. **Text message are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

33. **Personal Liability**. An individual may be personally liable for TCPA violations when personally involved in making or authorizing the calls. 47 U.S.C. § 217; *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013).

34. **Punitive Damages.** A party may recover exemplary damages where a "defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294(a). Malice includes "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).

# CLASS ACTION ALLEGATIONS

35.    Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and three Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

36.    Class Definitions. Plaintiff proposes the following Classes:

**The Automated Calls Class**
All people in the United States who (1) within four years prior to the filing of this action, (2) Defendants sent a text message to their cellular telephone, (3) using the same equipment or type of equipment utilized to send text messages to Plaintiff.

**The Do Not Call Class**
All people in the United States who (1) within the four years prior to the filing of this action, (2) Defendants sent more than one telephone solicitation via text message within any 12-month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Failure to Identify Class**
All people in the United States (1) who within four years prior to the filing of this action, (2) Defendants sent more than one telemarketing text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the text message did not disclose the identity of the individual caller and the identity of the entity on whose behalf the call was made like the message sent to Plaintiff.

37.    A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

38.     If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

39.     **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

40.     **Commonality**.  A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

41.     There are questions of law and fact common to the proposed Classes. These questions include, inter alia:

    i.     Did they receive a text from Defendants?

    ii.    Was the number texted registered on the Do Not Call Registry?

    iii.   Did Defendants use an Automatic Telephone Dialing System ("ATDS")?

    iv.   Were the text messages for an emergency purpose?

    v.    Did the text messages properly identify the sender?

    vi.   Were the actions willful or knowing?

42.     **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

43.     Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members' claims arise from the same conduct of Defendants: text message sent to people on the DNC registry, with no identification of the sender, and sent using an ATDS without express written consent.

44.     **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps

in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Plaintiff is an adequate representative of the Classes because his interests are common with the interests of the Classes, and he will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent and experienced in TCPA and class action litigation.

45.     **Predominance of Common Questions and Superiority**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability

of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

46.     The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

47.     Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. For The Automated Calls Class: Did Defendants text a putative class member without authorization using an ATDS? For the DNC Class, the question for all members is: Did Defendants text a putative class member who was registered on the DNC registry? For the Failure to Identify Class, the question for all members is: Did Defendants properly identify themselves in the text message? The common answer to these questions will determine Defendants' liability. Precedent demonstrates these questions can be litigated on a class-wide basis.

## FIRST CAUSE OF ACTION
Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)
(On Behalf of Plaintiff and the Automated Calls Class)

48.     Defendants' use of an ATDS to contact Plaintiff and members of the Automated Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

49.     As a result, Plaintiff and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

50.     Because the violation was knowing and willful, the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

51.     Plaintiff and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Defendants from using an ATDS when sending telemarketing text messages without the prior express written consent of the called party.

## SECOND CAUSE OF ACTION
Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)
(On Behalf of Plaintiff and the Do Not Call Class)

52.     Defendants' telephone solicitations via text message to the residential cellular telephones of Plaintiff, and members of the Do Not Call Class, while on the National Do Not Call Registry constitute a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

53.     As a result of the violation of 47 C.F.R. § 64.1200(c), Plaintiff and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

54.     Because the violations were knowing and willful, the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

55.     Plaintiff and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR.

**THIRD CAUSE OF ACTION**
Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
(On Behalf of Plaintiff and the Failure to Identify Class)

56.     Defendants' sending of telemarketing text messages to the residential cellular telephones of Plaintiff, and members of the Failure to Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

57.     As a result of the violations of 47 C.F.R. § 64.1200(d), Plaintiff and members of the Failure to Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

58.     Because the violations were knowing and willful, the Court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

59.     Plaintiff and members of the Failure to Identify Class are also entitled to and seek injunctive relief requiring Defendants to disclose the name of the actual

individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

**RELIEF REQUESTED**

60.     Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as class representative;

C.     Appointment of the undersigned as counsel for the Classes;

D.     An order enjoining Defendants from using an ATDS when sending telemarketing text messages without the consent of the called party;

E.     An order enjoining Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR;

F.     An order requiring Defendants to disclose the actual name of the individual, as well as the actual name of the incorporated entity on whose behalf any text messages are sent, when telemarketing;

G.     An award of damages to Plaintiff and the Classes, as allowed by law;

H.     Punitive and exemplary damages for the willful misconduct; and

I.     Orders granting such other relief as the Court deems necessary, just, and proper.

# JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: August 10, 2022

LawHQ, PC
Attorney for Plaintiff

/s/ *John Kauffman*
John Kauffman